FILED
09/27/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 19, 2022 Session

## THOMAS KRAJENTA ET AL. v. VOLKER PAUL WESTPHAL ET AL.

Appeal from the Chancery Court for Shelby County
No. CH-18-0278     JoeDae L. Jenkins, Chancellor

_____

### No. W2021-00832-COA-R3-CV

_____

Appellants, board members and members of Appellee homeowner's association, filed a *pro se* lawsuit against the homeowner's association and other board members, who are also Appellees. Appellees filed a motion to dismiss the amended petition on the ground that Appellants failed to bring a proper derivative action. Appellants filed voluntary nonsuits before the trial court heard the motion to dismiss. Despite the voluntary nonsuits, the trial court granted the motion to dismiss and denied the voluntary nonsuits. The trial court also awarded Appellees a portion of their attorney's fees under Tennessee Code Annotated section 48-56-401(e), and, alternatively, under Tennessee Code Annotated section 20-12-119(c). Because the trial court should have allowed Appellants' nonsuits, we: (1) reverse the trial court's denial of the nonsuits; (2) vacate the trial court's order granting Appellees' motion to dismiss; and (3) vacate the trial court's order granting Appellees' attorney's fees. The trial court's order dividing the special master fees equally between the parties is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Vacated in Part; Reversed in Part; Affirmed in Part; and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Michael F. Rafferty and Emily Hamm Huseth, Memphis, Tennessee, for the appellants, Thomas Krajenta, Johnny Pulliam, and Kim Wagner.

Jonathan L. Miley, Mt. Juliet, Tennessee, for the appellant, David G. Mills.

Canon F. Allen, Sr., Memphis, Tennessee, for the appellees, Volker Paul Westphal, Karen Taylor, Mike Poindexter, Janice Tankson, and Riverwood Farms Association, Inc.

## OPINION

## I. Background

This case arises out of a dispute between members of the Riverwood Farms Association, Inc. (the "HOA"), the homeowner's association that manages the Riverwood Farms neighborhood in Cordova, Tennessee. The HOA is run by a Board of Directors (the "Board") consisting of seven homeowners, who are elected annually. On March 1, 2018, Thomas Krajenta, Johnny Pulliam, Michael Pickens, David Mills ("Appellant Mills"), Terry Coggins, and Kim Wagner (together, the "Petitioners") filed a *pro se* verified petition to appoint a receiver to administer the affairs of the HOA in the Chancery Court of Shelby County ("trial court").[1] The petition listed only the HOA as a defendant. At the time of the filing, Messrs. Krajenta, Pulliam, and Pickens were incumbent Board members of the HOA. Appellant Mills was a former Board member, and Messrs. Coggins and Wagner were homeowners and members of the HOA but not Board members.

On May 1, 2018, the HOA filed a motion to dismiss the verified petition to appoint a receiver. In essence, the motion argued that, "[b]ased on the allegations of the [p]etition[,] the only action [the Petitioners] could bring [was] a derivative action," and, "[b]ecause they [did] not [bring a derivative action], the [p]etition should be dismissed." On May 14, 2018, the Petitioners filed a *pro se* first amended verified complaint for a derivative suit, petition to stop *ultra vires* activity, verified petition to appoint a receiver to administer the affairs of the HOA, and request for declaratory judgment (the "amended petition"). The Petitioners added the other four incumbent Board members as defendants: Volker Paul Westphal, Karen Taylor, Mike Poindexter, and Janice Tankson (together with the HOA, "Appellees"). Although not pertinent to the issues raised in this appeal, we note that the trial court appointed a special master to oversee a limited issue in May 2018.

On June 7, 2018, Appellees filed a motion to dismiss the amended petition. In pertinent part, and as discussed further below, Appellees alleged that, although the Petitioners asserted that they were bringing a derivative action, they failed to bring a proper derivative action. In support of their motion to dismiss, Appellees argued, *inter alia*, that derivative actions *require* an attorney to file them. Because the Petitioners filed the lawsuit *pro se*, Appellees maintained that it was not a proper derivative action and should be dismissed. In their motion, Appellees requested attorney's fees under two statutes, discussed further below. We note that, when the petitions were filed, Appellant Mills was a retired attorney with an inactive Tennessee license. On June 18, 2018, Carol Molloy, a Massachusetts attorney (with a Tennessee license) and a former colleague of Appellant Mills, filed an appearance on behalf of the Petitioners. The same day, the Petitioners filed their response in opposition to the motion to dismiss the amended petition. On July 10,

---

[1] For purposes of this appeal, it is not necessary to examine the underlying issues that precipitated this lawsuit.

2018, after reinstating his law license, Appellant Mills filed a notice of appearance on behalf of the Petitioners. Such notice provided that he would be lead counsel, and that Ms. Molloy would remain as co-counsel.

On July 13, 2018, Appellees filed a motion to disqualify Appellant Mills as counsel for the Petitioners, arguing that he could not serve in such capacity because he was a "material witness" in the lawsuit. On August 6, 2018, Appellant Mills filed a voluntary nonsuit without prejudice of his action against Appellees. On August 31, 2018, the trial court entered an order granting Appellees' motion to disqualify Appellant Mills as the Petitioners' counsel on its finding that Appellant Mills was "likely to be a necessary witness" at trial. On October 12, 2018, attorneys Emily Hamm Huseth and Michael F. Rafferty filed notices of appearance as well as a motion to substitute counsel on behalf of all of the Petitioners except for Appellant Mills. Although Ms. Molloy filed an objection to the substitution, the trial court granted it on October 29, 2018. On November 30, 2018, Messrs. Krajenta, Pickens, Pulliam, Coggins, and Wagner filed a notice of voluntary nonsuit without prejudice.

Despite the voluntary nonsuits, the trial court heard Appellees' motion to dismiss on December 7, 2018. By order of January 31, 2019, the trial court denied both voluntary nonsuits and granted in part and denied in part Appellees' motion to dismiss. The trial court reserved the issue of attorney's fees. The trial court's January 31st order does not provide any explanation as to why it denied the nonsuits and granted the motion to dismiss, and there is no transcript of the hearing or the trial court's oral ruling.

On April 17, 2020, Appellees filed their motion for fees and expenses. Appellees argued that the trial court had the authority to award them $118,832.00 for fees and expenses under Tennessee Code Annotated section 48-56-401(e), which allows for the award of reasonable expenses (including attorney's fees) in the defense of a frivolous or bad-faith derivative action against a non-profit corporation. Alternatively, Appellees argued that the trial court should award them fees and expenses under Tennessee Code Annotated section 20-12-119(c), which compels an award of up to $10,000.00 for a party that successfully brings a motion to dismiss, i.e., the "loser pays" statute. On May 31, 2020, Appellant Mills filed a motion for special appearance and opposition to Appellees' motion for attorney's fees. On February 24, 2021, Messrs. Krajenta, Pulliam, Pickens, and Wagner filed a response in opposition to Appellees' motion for fees and expenses. We note that, by this time, Mr. Coggins had filed a petition for bankruptcy and was no longer an active party in this case.

On February 26, April 12, and May 13, 2021, the trial court heard Appellees' motion for fees and expenses. As discussed more fully below, by order of July 8, 2021, the trial court awarded Appellees: (1) a $95,000.00 judgment under Tennessee Code Annotated section 48-56-401(e); and, alternatively, (2) a $10,000.00 judgment under Tennessee Code Annotated section 20-12-119(c). Both judgments were awarded jointly and severally

against Appellant Mills, and Messrs. Krajenta, Pulliam, Pickens, and Wagner. Appellant Mills appeals. Separately, Messrs. Krajenta, Pulliam, and Wagner (the "Krajenta Appellants," and together with Appellant Mills, "Appellants") also appeal.[2]

## II. Issue

Although the parties raise several issues on appeal, we perceive the dispositive issue to be whether the trial court erred in denying Appellants' voluntary nonsuits.

## III. Standards of Review

The issue in this case requires this Court's review of the Tennessee Rules of Civil Procedure and statutory construction, both of which are questions of law, which we review *de novo* with no presumption of correctness. *See **Lacy v. Cox***, 152 S.W.3d 480, 483 (Tenn. 2004) (rules of civil procedure); ***In re Estate of Tanner***, 295 S.W.3d 610, 613 (Tenn. 2009) (statutory construction).

## IV. Analysis

As an initial note, we agree with the Krajenta Appellants that this case presents a "legal quagmire," which is further complicated by the trial court's incomplete and contradictory orders. Given that this case turns on the question of whether the trial court should have allowed Appellants' voluntary nonsuits, we begin with a review of Tennessee Rule of Civil Procedure 41.01, which governs voluntary nonsuits to dismiss actions without prejudice. The rule provides that, "[s]ubject to the provisions of Rule 23.05, Rule 23.06, or Rule 66 or of any statute, . . . plaintiff[s] *shall have the right* to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause . . . ." Tenn. R. Civ. P. 41.01(1) (emphasis added). Under the plain language of Rule 41.01, unless an exception applied, it was error for the trial court to deny Appellants' voluntary nonsuits.

One of the exceptions to Rule 41.01 is found in Rule 23.06. Rule 23.06 provides that, when a plaintiff brings a derivative action on behalf of a corporation, the plaintiff is required to seek court approval before the action may be voluntarily dismissed. Tenn. R. Civ. P. 23.06. Similar provisions are found in the statutes concerning derivative actions, Tennessee Code Annotated section 48-56-401 (addressing derivative actions on behalf of non-profit corporations) and section 48-17-401 (addressing derivative actions on behalf of for-profit corporations). *See* Tenn. Code Ann. § 48-56-401(d); Tenn. Code Ann. § 48-17-401(c). As discussed further below, although the trial court's denial of the voluntary nonsuits was premised on Rule 23.06 and Tennessee Code Annotated section 48-56-401,

---

[2] Mr. Pickens did not file a timely appeal of the trial court's order. Accordingly, he is not a party to this appeal.

the trial court made contradictory findings concerning whether Appellants' lawsuit constituted a proper derivative action.  The resolution of this question is important.  If Appellants did *not* bring a proper derivative action, then Appellants would *not* have been required to obtain the trial court's approval of the voluntary nonsuits; under this scenario, the trial court's denial of the nonsuits would constitute reversible error.  Accordingly, the threshold question is whether Appellants brought a proper derivative action.

"A derivative action is an extraordinary, equitable remedy available to shareholders when a corporate cause of action is, for some reason, not pursued by the corporation itself." *Memphis Health Ctr., Inc. ex rel. Davis v. Grant*, No. W2004-02898-COA-R3-CV, 2006 WL 2088407, at *8 (Tenn. Ct. App. July 28, 2006) (quoting *Lewis v. Boyd*, 838 S.W.2d 215, 221 (Tenn. Ct. App. 1992)).  As the Tennessee Supreme Court has explained, "[a] shareholders' derivative action seeks redress for a wrong *to the corporation*, and the right of the shareholder to maintain the action is derivative or secondary." *Keller v. Est. of McRedmond*, 495 S.W.3d 852, 868 (Tenn. 2016) (citation omitted) (emphasis added). "The derivative suit is a statutorily created substantive right." *Walker v. Tri-Cnty. Elec. Membership Corp.*, No. 01-A-01-9002-CH00049, 1990 WL 120721, at *4 (Tenn. Ct. App. Aug. 22, 1990).  "To guard against misuse of the derivative action, preconditions to such lawsuits are imposed." *Memphis Health Ctr., Inc. ex rel. Davis*, 2006 WL 2088407, at *9.  Indeed, to "ensure that the statutory scheme provided for the maintaining of a derivative suit remains uniform[,] . . . a party must meet all the requirements of both [Tennessee Rule of Civil Procedure] 23.06 and Tennessee Code Annotated section 48-56-401." *Walker*, 1990 WL 120721, at *3.  We turn to those requirements now.

As an initial matter, any action "to redress injuries to a corporation . . . cannot be maintained by a stockholder in his own name but must be brought in the name of the corporation . . . and can be asserted *only through the corporation*." *Third Nat. Bank in Nashville v. Celebrate Yourself Prods., Inc.*, 807 S.W.2d 704, 707-08 (Tenn. Ct. App. 1990) (emphasis added) (citing *Com. Credit Dev. Corp. v. Scot. Inns of Am., Inc.*, 69 F.R.D. 110, 117 (E.D. Tenn. 1975)).  Tennessee Code Annotated section 48-56-401(a) provides that a derivative suit may be brought by: (1) "[a]ny member or members having five percent (5%) or more of the voting power or by fifty (50) members, whichever is less; or (2) [a]ny director." Tenn. Code Ann. § 48-56-401(a).  Tennessee Code Annotated section 48-51-201(12) defines "directors," in part, as "natural persons . . . elected or appointed to act as members of the board, irrespective of the names or titles by which such persons are described[.]" Tenn. Code Ann. § 48-51-201(12).  Although Tennessee law permits individuals to represent *themselves pro se*, such laws "are not applicable to corporations [as] a corporation cannot file a lawsuit *pro se*." *Humphreys v. Breakstone*, No. W1999-02502-COA-R3-CV, 2001 WL 99570, at *3 (Tenn. Ct. App. Jan. 30, 2001).  Because the Rules of the Tennessee Supreme Court "prohibit any person from engaging in the practice of law without a license[,] a non-lawyer agent, such as a shareholder, may *not* represent a corporation in court proceedings." *Id.* (emphasis added) (citing *Old Hickory Eng'g & Mach. Co. v. Henry*, 937 S.W.2d 782, 786 (Tenn. 1996)); *see also* Tenn. Sup.Ct.

R. 7, § 1.01. In short, any derivative action brought by a *pro se* plaintiff is improper, and any petition for a derivative action must be signed by a licensed attorney.

Section 48-56-401 also provides that a complaint in a derivative action must be verified and "allege with particularity the demand made, if any, to obtain action by the directors and either why the plaintiffs could not obtain the action or why they did not make the demand." Tenn. Code Ann. § 48-56-401(c); *see also* Tenn. R. Civ. P. 23.06 ("The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action desired from the directors or comparable authority and, if necessary, from the shareholders, or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort."); ***Lewis***, 838 S.W.2d at 221 ("The most common precondition requires the shareholder to first make a written demand on the corporation's directors requesting them to prosecute the suit or to take other suitable corrective action."). However, if such a demand would be futile, this requirement may be excused. *See* ***Humphreys v. Plant Maint. Serv., Inc.***, No. 02A01-98-11-CV-00323, 1999 WL 553715, at *6 (Tenn. Ct. App. July 30, 1999); ***Lewis,*** 838 S.W.2d at 221. Lastly, Rule 23.06 provides that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Tenn. R. Civ. P. 23.06.

In the motion to dismiss the amended complaint, Appellees argued that Appellants failed to satisfy several of the foregoing requirements for a proper derivative action. Specifically, Appellees argued that the three incumbent board members, Messrs. Krajenta, Pulliam, and Pickens, were the *only* Petitioners with standing to bring the suit, and that the three non-board members, Messrs. Coggins and Wagner, and Appellant Mills, did not have standing to bring the claim "because there [were] too few of them to bring a derivative action." *See* Tenn. Code Ann. § 48-56-401(a)(1). Thus, Appellees argued that the non-board members should have been dismissed "because they [could] only assert those claims as homeowners, not Board members." Appellees also argued that the amended complaint was not a properly filed derivative action because it was filed by *pro se* plaintiffs, not a practicing attorney. *See* ***Humphreys***, 2001 WL 99570, at *3 (citing ***Old Hickory Eng'g & Mach. Co.***, 937 S.W.2d at 786). Additionally, Appellees argued that the amended complaint "contain[ed] no allegations as to what steps Petitioners took to get the Board to appoint a receiver or get the homeowners to demand that the Board hire a receiver." *See* Tenn. Code Ann. § 48-56-401(c); *see also* ***Lewis***, 838 S.W.2d at 221-22. Lastly, Appellees argued that the amended complaint contained "no allegations that the Petitioners 'fairly and adequately' represent[ed] the interest of the shareholders," and that "Petitioners [did] not even allege in conclusory fashion that they 'fairly and adequately' represent[ed] the homeowner members." *See* Tenn. R. Civ. P. 23.06. Appellees argued that the foregoing shortcomings required the trial court's dismissal of "all claims against the HOA[.]"

Although the trial court failed to articulate why it granted Appellees' motion to dismiss, we deduce from its July 8, 2021 order on fees and expenses that the trial court

adopted Appellees' arguments, *supra*. In the order on fees and expenses, the trial court found, in part, that Appellants: (1) failed to make a demand to the HOA Board prior to filing suit but alleged that such demand would be futile; (2) commenced this action *pro se* and attempted to cure that problem by hiring Ms. Molloy and Appellant Mills; and (3) did not fairly and adequately represent the interests of the members similarly situated in enforcing the rights of the HOA. Despite the foregoing findings, the trial court concluded that: (1) Appellants' nonsuits required the trial court's approval under both Rule 23.06 and Tennessee Code Annotated section 48-56-401, discussed *supra*; and (2) Appellees could recover fees and expenses under section 48-56-401(e). *See* Tenn. Code Ann. § 48-56-401(e) ("On termination of the [derivative action], the court may require the plaintiffs to pay any defendant's reasonable expenses (including counsel fees) incurred in defending the suit if it finds that the proceeding was commenced frivolously or in bad faith."). The foregoing demonstrates the trial court's contradictory findings and conclusions concerning whether Appellants brought a proper derivative action. Equally contradictory is the trial court's denial of Appellants' nonsuits on its implicit finding that the underlying action was derivative and its subsequent grant of Appellees' motion to dismiss on the supposition that Appellants failed to assert a proper derivative action.

Appellees' arguments on appeal are similarly confusing and contradictory. When asked at oral argument whether Appellants brought this case "as a proper derivative action," counsel for Appellees stated: "[W]e contend that this was not a proper derivative action." However, later in oral argument, counsel argued that this "is not a 40.01 dismissal, this could only be a 23.06 dismissal because it's a derivative action." Perhaps as an explanation for this apparent contradiction, Appellees argue in their appellate brief that Appellants' suit was "derivative in nature," and "it was because [Appellants] failed to properly pursue their clearly derivative claims that [Appellees] argued dismissal was appropriate." From the foregoing, it appears that Appellees' argument is that if a plaintiff's claims are "derivative in nature," and the plaintiff *intends to* and *attempts to* assert a derivative action, then Rule 23.06 and Tennessee Code Annotated section 48-56-401 apply to the action *despite* the plaintiff's failure to adhere to the requirements in the rule and the statute.

Tennessee case law belies Appellees' reasoning. As discussed *supra*, there are "preconditions to [derivative] lawsuits[,]" *Memphis Health Ctr., Inc. ex rel. Davis*, 2006 WL 2088407, at *9, and "a party must meet all the requirements of both [Tennessee Rule of Civil Procedure] 23.06 and [Tennessee Code Annotated section] 48-56-401," *Walker*, 1990 WL 120721, at *3, for his or her action to "qualify as a derivative suit." *Id.* In *Kovacs-Whaley v. Wellness Sols., Inc.*, No. M2011-00089-COA-R3-CV, 2012 WL 927777 (Tenn. Ct. App. Mar. 16, 2010), this Court held that the for-profit derivative statute (Tennessee Code Annotated section 48-17-401) was inapplicable where a plaintiff *attempted* to bring a derivative action but failed to "comply with the requirements of the statute in bringing her action." *Id.* at *10. Although the statute at issue here concerns non-profit derivative suits, it is similar to the statute concerning for-profit derivative suits, and

so the reasoning in the **Kovacs-Whaley** opinion is instructive. Both **Kovacs-Whaley** and **Walker** hold that a plaintiff *must* fully comply with Tennessee statutes and rules concerning derivative actions in order for his or her action to "qualify as a derivative suit"; a party's *attempt* or *intent* is irrelevant. In view of the foregoing, we turn to the question of whether Appellants fully complied with the relevant statute and rule concerning non-profit derivative actions. We begin with a review of the amended complaint.

The amended complaint was filed by *pro se* plaintiffs, some of whom did not have standing to bring the action. While derivative actions *must* be filed by an attorney licensed to practice law in Tennessee, Appellants attempted to "cure" this issue when they later retained counsel. *See* **Humphreys**, 2001 WL 99570, at *3 (citing **Old Hickory Eng'g & Mach. Co.**, 937 S.W.2d at 786); *see also* Tenn. Sup.Ct. R. 7, § 1.01. Further, as Appellees argued, only three of the Petitioners had standing to bring a derivative action. Messrs. Krajenta, Pulliam, and Pickens were the only active Board members of the HOA when the amended petition was filed; Appellant Mills, and Messrs. Coggins and Wagner were simply homeowner members, and, as such, required 5% or more of the voting power, or 50 members, whichever was less, to have standing to bring the action. Tenn. Code Ann. § 48-56-401(a). In the amended complaint, Petitioners alleged that there were approximately 1,134 single family dwellings and 2,700 to 3,000 individuals residing in the subdivision. Given these numbers, it is clear that Appellant Mills, and Messrs. Coggins and Wagner did not, as Appellees argued, have standing to bring a derivative action because there were "too few of them." We need not address whether Appellants "cured" the foregoing issues given our analysis below.

On this Court's review, we conclude that the substance of the amended complaint was insufficient to satisfy the pleading requirements for a derivative action. We recall that a written demand to a corporation's directors is a requirement for a derivative action. *See* **Lewis**, 838 S.W.2d at 221. Indeed, a complaint in a derivative action must "allege with particularity the demand made, if any, to obtain action by the directors and either why the plaintiffs could not obtain the action or why they did not make the demand." Tenn. Code Ann. § 48-56-401(c); *see also* Tenn. R. Civ. P. 23.06. The policy behind the demand requirement was explained by the Tennessee Supreme Court:

> [I]t is clear that no stockholders should be permitted to interfere and control the management or frustrate the purposes of the corporation merely upon an allegation of the existence of a state of affairs contrary to their judgment of propriety, without any effort to have it charged in the mode indicated. Any other view would be destructive of the purposes for which corporations are formed, and of the principle of corporate action and management. It would make them hot-houses of litigation, and leave the valuable franchises held by them at the mercy of the misjudgment, passion, or speculative propensities of individual stockholders. While the rule announced neither permits abuses in this or the opposite direction, it does not prevent suits for abuse of trust,

- 8 -

or mismanagement. ***It only requires that stockholders proceed in that lawful and orderly way for the correction of abuses within the corporation*** which they have engaged to do on becoming shareholders in it, which its existence and interest require they shall do,—***to reform alleged abuses before involving the corporation and other shareholders therein in litigation***; but it equally provides that when they have done this, and found themselves unable to obtain relief to which they are entitled, it will be given them by the courts.

***Akin v. Mackie***, 310 S.W.2d 164, 167-68 (Tenn. 1958) (quoting ***Boyd v. Sims***, 11 S.W. 948, 949 (Tenn. 1889)) (emphases added).

There is no indication in the amended complaint that Appellants served a written demand on Appellee Board members. As noted above, this requirement may be excused if such exercise would be futile. ***Humphreys***, 1999 WL 553715, at *6; ***Lewis,*** 838 S.W.2d at 221. There are two circumstances in which a demand may be futile: where a demand is refused and where a demand is excused. ***Lewis***, 838 S.W.2d at 222. Importantly, even in "demand refused" and "demand excused" cases the statute and rule still require the complaint to allege "with particularity" why any demand would be futile. *See* Tenn. Code Ann. § 48-56-401(c); *see also* Tenn. R. Civ. P. 23.06.

In demand refused cases, "the corporation's directors have [already] refused to take action in response to a shareholder's [previous] demand." ***Lewis***, 838 S.W.2d at 222. Accordingly, for the plaintiff to be relieved of the demand requirement under this exception, a complaint must allege, with particularity, how a corporation's directors previously refused a plaintiff's demands. It appears that Appellants relied on the "demand refused" exception to excuse them from the demand requirement. In the amended complaint, Appellants alleged that "[t]he verified affidavits of the petitioning incumbent Board members . . . support[ed] the futility of making a demand under the present circumstances[.]" The affidavits stated:

5.  [Appellant Board members] were concerned that actions of the Board were taken without consideration of [the HOA's] Governing Documents or state statutes and were outside of the Board's authority.

6.  [Appellant Board members] discovered that there is so much that needs to be done that it cannot possibly be accomplished during the one year term of a single group of Board members.

7.  [Appellant Board members] also discovered that the [HOA] had not been too successful in managing long-term maintenance, repair, and replacement projects.

- 9 -

8.  *[Appellant Board members'] efforts to fulfill [their] duties as Board members were met with resistance* and outright hostility by Ms. Joyce Sp[ei]cha,[3] the other Board members[,] and at least one (1) other individual who had been a Board member the prior year but had not been re-elected.

9.  *Despite [their] best efforts it became obvious to [Appellant Board members] that [their] efforts to resolve these matters were futile.*

(Emphases added).  Similarly, the amended complaint alleged:

280.  Three (3) members of the 2017 Board, Mr. Krajenta, Mr. Pulliam[,] and Mr. Pickens, **have attempted to address issues** related to security, the lack of a financial audit[,] and other vendor contracts[,] including with the Management Company, Ambassador [(security/patrol company)][,] and Echo Systems [(landscaping company)].

281.  *They have attempted to no avail to have the Board meet to adopt policies to improve Board management and operation of the [HOA's] business affairs.*

285.  *Sincere efforts to resolve [the] serious and fundamental matter of the Board's authority to use Assessment funds have been futile as have been efforts to resolve the matter of members and Directors access to and rights to review [HOA] records including contracts with vendors.*

(Emphases added).

In the amended complaint, Appellants alleged facts concerning *seven* categories of issues before pleading four causes of action, requesting a declaratory judgment, and requesting the appointment of a receiver.[4]  Problematically, Appellants failed to allege,

---

[3] The amended complaint alleged that Ms. Speicha was the management company's representative. From the pleading, it appears she was neither a Board member nor member of the HOA.

[4] The seven categories of alleged issues concerned: (1) public property and public services; (2) the waterways in the neighborhood; (3) the "lack of expertise and a location for meetings"; (4) the 2012 engineering study; (5) a "lack of transparency and access to [HOA] records and documents"; (6) the HOA's independent contractors (the property management company, the law firm that provides the HOA legal services, the security/patrol company, the grounds and landscaping company); and (7) "the Board of Directors, and a history of its actions and inactions, and poor decisions."  The four causes of action were: (1) past and present negligence and intentional acts of the HOA by its Board, officers, and agents; (2) past and present failure of the HOA, its directors, officers, and agents to comply with state laws generally and specific statutes; (3) past and present failure or refusal of the Board, its officers, and agents to comply with the HOA's governing documents; and (4) past and present *ultra vires* acts.  Additionally, Appellants asked the trial court to "grant them a declaratory judgment holding that it is unlawful for the [HOA] to contract for security services for the entire subdivision."  Appellants also alleged that, based on the foregoing claims,

- 10 -

*with particularity*, the specific "efforts" Appellants undertook to resolve *any* of the alleged issues, and how Appellee Board members resisted, or refused, the same. *See Lewis*, 838 S.W.2d at 222. By way of example, one of the issues Appellants alleged concerned "the frequent rise and fall of the lake level[,] . . . [which] has eroded and continues to erode the shoreline[.]" Appellants further alleged that "[t]his erosion cause[d] trees around the shoreline to continually fall into the lake . . . and in some places the shoreline may have cut back fifteen (15) feet or more from when the lake was built." Accordingly, Appellants alleged that the HOA "need[ed] to plant water resistant trees and shrubs around the perimeter of the lake to mediate erosion and that need[ed] to be completed within one (1) year." Although Appellants identified an alleged issue and offered a plan for remediation, they failed to explain whether they attempted to bring this problem to the attention of the Board or the HOA before bringing the lawsuit. While this is but one example, all of Appellants' issues were pleaded in this manner. Indeed, although Appellants' amended complaint set out their concerns and suggestions for remedying those concerns, it failed to allege that Appellants attempted to resolve the issues before filing suit and that Appellee Board members refused such attempts. Failing to satisfy this requirement contravenes the policy underlying the demand requirement, i.e., that a plaintiff should attempt to "reform alleged abuses before involving the corporation and other shareholders therein in litigation." *Akin*, 310 S.W.2d at 167-68 (quoting *Boyd*, 11 S.W. at 949).

For completeness, we turn to review whether the amended complaint alleged any facts to show that a demand would be "excused." Tennessee case law provides that "a demand of the agents of a corporation . . . is not necessary *if these agents are themselves guilty of the wrongs complained of against the corporation*[.]" *Boyd*, 11 S.W. at 949-50 (emphasis added); *see also Akin*, 310 S.W.2d at 168 (quoting *Peeler v. Luther*, 135 S.W.2d 926, 928 (Tenn. 1940)) ("[Demand] need not be made where the corporation is under the control *of the wrongdoers* or of persons who are *necessary parties defendant*.") (emphasis added); *Deaderick v. Wilson*, 67 Tenn. 108, 131 (Tenn. 1874) (holding that "if the corporation is still under the control of those who *must* be defendants in the suit," the demand requirement is excused) (emphasis omitted) (emphasis added). This Court has opined that,

> [i]n demand excused cases, the grounds for the shareholder's claim are (1) that the board is interested and not independent and (2) that the challenged transaction is not protected by the business judgment rule. Thus, demand excused cases require an examination of the corporate decision-makers' interest and independence, as well as the good faith and reasonableness of its investigation.

*Lewis*, 838 S.W.2d at 222. Concerning the business judgment rule, courts "presume that a

---

"a receiver [was] necessary to protect and manage the property of the [HOA] while Petitioners seek to remedy the harms to the [HOA] of this past conduct and seek to enjoin or prohibit similar future conduct."

corporation's directors, when making a business decision, acted on an informed basis, in good faith, and with the honest belief that their decision was in the corporation's best interests." *Id.* at 221-22. As discussed above, Appellants' demands would certainly be futile, and, therefore, excused, if Appellee Board members were "themselves guilty of the wrongs complained of." *See Boyd*, 11 S.W. at 949-50. Tennessee courts have found a demand futile and unnecessary when: (1) the defendants were the directors of a corporation and accused of insider trading and scheming to defraud smaller stockholders, *see Deaderick*, 67 Tenn. at 112; (2) the president and treasurer, a majority stockholder, was personally accused of depleting the company's treasury at the expense of the minority stockholders, *see Akin*, 310 S.W.2d at 168; (3) the amended complaint alleged that a demand would be futile because the defendants had "a direct interest in continuing to breach their fiduciary duty and violate the Bylaws and federal rules and regulations"), *Memphis Health Ctr., Inc. ex rel. Davis*, 2006 WL 2088407, at \*10; and (4) the complaint alleged that "[the board] wast[ed] corporate assets to the detriment of the [c]orporation, [used] corporate assets for the personal gain of the individual board members," and depleted corporate assets, *Bourne v. Williams*, 633 S.W.2d 469 (Tenn. Ct. App. 1981). No such circumstances were pleaded in this case. Notably, the amended complaint contained *no allegations* of malfeasance or self-dealing by specific Appellee Board members. In fact, the amended complaint did not allege *any actions* by specific Appellee Board members, much less that such actions were "the wrongs complained of against the corporation." *Boyd*, 11 S.W. at 949-50 (emphasis added); *see also Akin*, 310 S.W.2d at 168 (quoting *Peeler*, 135 S.W.2d at 928). Rather, the amended complaint contains a tabulation of Appellants' grievances with the HOA and an extensive list of actions Appellants believed the HOA should undertake to cure those grievances. Accordingly, we conclude that the amended complaint failed to "allege with particularity the demand made, if any, to obtain action by the [Appellee Board members] and either why [Appellants] could not obtain the action or why they did not make the demand." Tenn. Code Ann. § 48-56-401(c); *see also* Tenn. R. Civ. P. 23.06.

Lastly, it is clear that Appellants did not "fairly and adequately represent the interests of the shareholders or members similarly situated." Tenn. R. Civ. P. 23.06. Appellants ostensibly admitted such when they alleged that they were "well aware that this action could be unpopular with a large number of members and they could well be voted out next November[.]" Indeed, Appellant Board members were voted out of their positions a mere two months after the amended complaint was filed. In short, other homeowners in the neighborhood became aware of, and were unhappy with, Appellants' lawsuit against the HOA and Appellee Board members, and, in July 2018, an overwhelming majority of homeowners voted to remove Appellant Board members from their positions. Such action clearly demonstrates that Appellants did *not* represent the interests of the majority of homeowners in the neighborhood.

Although Appellants' claims may have been derivative in nature, and Appellants

- 12 -

may have *intended* to and *attempted* to bring a proper derivative action,[5] they failed to comply with the requirements of the statute and the rule in bringing such action. Because of their failure, Appellants' lawsuit did not qualify as a derivative action. ***Walker***, 1990 WL 120721, at *3; ***Kovacs-Whaley***, 2012 WL 927777, at *10. Accordingly, Tennessee Code Annotated section 48-56-401 and Tennessee Rule of Civil Procedure 23.06 are inapplicable here. *See **Kovacs-Whaley***, 2012 WL 927777, at *10. Thus, it was error for the trial court to rely on Rule 23.06 and section 48-56-401 to deny Appellants' voluntary nonsuits. As such, we reverse the trial court's order denying the nonsuits, and we remand for entry of an order allowing the nonsuits. *See* Tenn. R. Civ. P. 41.01(3).

In view of our conclusion that the trial court should have allowed the nonsuits, it was error for the trial court to hear and/or grant Appellees' motion to dismiss, and we vacate that portion of the trial court's order. We also vacate the trial court's order awarding Appellees' fees and expenses. Because Tennessee Code Annotated section 48-56-401 is inapplicable here, it was error for the trial court to award fees under the statute. *See* Tenn. Code Ann. § 48-56-401(e); *see also **Walker***, 1990 WL 120721, at *4; ***Kovacs-Whaley***, 2012 WL 927777, at *10. Similarly, because we vacate the trial court's order on the motion to dismiss, the trial court's award of fees under the "loser pays" statute is also vacated. Tenn. Code Ann. § 20-12-119(c) ("[I]n a civil proceeding, where a trial court grants a motion to dismiss . . . for failure to state a claim . . . , the court shall award the party or parties against whom the dismissed claims were pending at the time the successful motion to dismiss was granted the costs and reasonable and necessary attorney's fees incurred in the proceedings . . . ."). Because no party appealed the trial court's order dividing the special master fees equally between the parties, this order is affirmed.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's order denying Appellants' nonsuits, and we remand the case for entry of an order allowing both nonsuits. We vacate the trial court's orders granting Appellees' motion to dismiss and Appellees' award of fees and expenses. We affirm the trial court's order concerning the special master's fees. The case is remanded for such further proceedings as are necessary and consistent with this Opinion. Costs of the appeal are assessed to Appellees, Volker Paul Westphal, Karen Taylor, Mike Poindexter, Janice Tankson, and Riverwood Farms Association, Inc., for all of which execution may issue if necessary.

_s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE

---

[5] For example, the amended complaint is titled "First Amended Verified Complaint for a Derivative Suit . . .," Appellants alleged that they brought the action "derivatively," and the amended complaint cited to Tennessee Code Annotated section 48-56-401 as "legal grounds for derivative action."